## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

PLASTI DIP INTERNATIONAL INC.,

                                Plaintiff,

v.

RUST-OLEUM BRANDS COMPANY,

                                Defendant.

Civil No. 14-1831 (JRT/SER)

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION**

---

Kristine M. Boylan and Michael M. Sawers, **BRIGGS & MORGAN, PA**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for plaintiff.

Raymond Rundelli and Thomas R. O'Donnell, **CALFEE, HALTER & GRISWOLD, LLP**, 1405 East Sixth Street, Cleveland, OH 44114; and Christopher A. Pinahs and Mark D. Schuman, **CARLSON CASPERS**, 225 South Sixth Street, Suite 4200, Minneapolis, MN 55402, for defendant.

Plaintiff Plasti-Dip International, Inc. ("Plasti Dip") brings this action against competitor Rust-Oleum Brands Co. ("Rust-Oleum") for trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1119, and 11125. Plasti Dip, manufacturer of the trademarked product PLASTI DIP, seeks a preliminary injunction against Rust-Oleum, manufacturer of FLEXIDIP, enjoining the company from (1) advertising, selling, and offering to sell product bearing the FLEXIDIP name online in any forum, including through third party online retailers and (2) selling or shipping, or in any way distributing any product bearing the product name FLEXIDIP.

The Court will deny Plasti Dip's motion for preliminary injunction, because the Court finds there is little likelihood of confusion between the two products.

## BACKGROUND

### I.  THE PRODUCTS

Plasti Dip is a Minnesota corporation with its principal place of business also in Minnesota.  (Compl. ¶ 3, June 6, 2014, Docket No. 1.)  Plasti Dip owns the brand name and registered trademark PLASTI DIP.  (Decl. of Laura Conley ("Conley Decl."), Ex. 1, Sept. 19, 2014, Docket No. 15.)  Plasti Dip began selling this product under the PLASTI DIP name in 1959.   (Compl. ¶ 5.)  A trademark for PLASTI DIP was issued in 1983. (Conley Decl. at Ex. 1)

PLASTI DIP is an "air dry plastic coating" used in projects in the home, garage, or garden, most often to spray paint cars or car parts such as wheel rims or door handles. (Conley Decl. at Exs. 1, 2, and 5.)  The coating protects against moisture, acids, abrasion, corrosion, and skidding/slipping, and remains flexible over time, even in cold weather conditions.  (Conley Decl. at Ex. 5.)

Rust-Oleum is a Delaware corporation with its principal place of business in Illinois.  (Compl. ¶ 4.)  Rust-Oleum products have been sold in the United States since the 1930s.  (Decl. of Michael T. Murphy, at ¶ 5, Oct. 20, 2014, Docket No. 25.)  Rust-Oleum makes a wide range of protective paint and coating products and the company is the market share leader in the United States for rust preventative, decorative, specialty and professional segments of the small-project paint category.  (*Id.* at ¶ 4; Decl. of Sean Lavery, at ¶ 4, Oct. 20, 2014, Docket No. 27.)   Rust-Oleum is the owner of U.S. Trademark Application No. 86/085,498, filed on or about October 8, 2013 seeking to

register the trademark for FLEXIDIP.  (Answer ¶ 8, July 29, 2014, Docket No. 9.)  Rust-Oleum began using the mark FLEXIDIP in late January 2014.  (*Id.* at ¶ 9.)  FLEXIDIP is a rubberized coating that adheres to metal, plastic, and glass.  Its recommended uses include customizing car wheels or other automotive uses and it can be used on kitchen utensils and other tools.  (Conley Decl. at Ex. 7.)

PLASTI DIP and FLEXIDIP are sold through some of the same channels of trade, though Rust-Oleum sells FLEXIDIP only at Home Depot.  (Lavery Decl. at ¶ 24.)  The two products are sold next to each other in brick and mortar Home Depot stores where the two products are surrounded by other Rust-Oleum products.  (Decl. of Patrick Persons, Exs. 1–2, Sept. 19, 2014, Docket No. 16.)  In addition, in online retail at Home Depot, the two products are also shown together when a shopper searches "Plasti Dip." (Conley Decl. at Ex. 8.)  Rust-Oleum's product also appears in response to online search engine results and search results online through Home Depot with searches for Plasti Dip. (Conley Decl. at Exs. 7–10.)

## II.   PROCEDURAL HISTORY

On June 6, 2014, Plasti Dip filed this action against Rust-Oleum.  (Compl. at 1.) On September 19, 2014, Plasti Dip filed this motion for preliminary injunction.  (Mot. for Prelim. Inj., at 1, Sept. 19, 2014, Docket No. 12.)  Prior to this action, on March 6 2014, Plasti Dip sent Rust-Oleum a cease and desist letter asserting that the FLEXIDIP mark was infringing on the mark for PLASTI DIP.   (Decl. of Patricia A. Cigelnik, Ex. L, Oct. 20, 2014, Docket No. 26.)  Rust-Oleum responded on March 17, 2014 denying the

allegations.   (*Id.* at Ex. M.)  Plasti Dip then filed with the Trademark Trial and Appeal Board a notice of opposition to Rust-Oleum's trademark registration application for FLEXIDIP.  (*Id.* at Ex. N.)  On May 27, Rust-Oleum filed an answer to the opposition. (*Id.* at Ex. O.)

## ANALYSIS

### I.      STANDARD OF REVIEW

The Court considers four factors in determining whether to grant preliminary injunctive relief: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest.  *S.J.W. ex rel. Wilson v.  Lee's Summit R– 7 Sch.  Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (citing *Dataphase Sys., Inc.  v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).  "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  *Dataphase*, 640 F.2d at 113. The party requesting injunctive relief bears the complete burden for showing the above factors.  *Watkins, Inc.  v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

### II.     PLASTI DIP'S MOTION FOR PRELIMINARY INJUNCTION

#### A.      Likelihood of Success on the Merits

While no single *Dataphase* factor is determinative, the likelihood of success on the merits is predominant in the preliminary injunction analysis.  *Janel Russell Designs, Inc.  v. Mendelson & Assoc., Inc.*, 114 F. Supp. 2d 856, 863 (D. Minn. 2000).  A claim of

trademark infringement under the Lanham Act requires ownership of a valid trademark and a likelihood of confusion between the registered mark and the alleged infringing use by the defendant.  *See* 15 U.S.C. § 1125(a)(1)(A); *Fargo Elecs., Inc. v. Iris Ltd., Inc.*, No. 04-1017 (JRT/FLN), 2005 WL 1431653, at *5 (D. Minn. Mar. 8, 2005).  There is no dispute that Plasti Dip has a valid trademark.  (Answer ¶ 6.)  To determine the likelihood of confusion, the Court looks to six factors: (1) the strength of the owner's mark; (2) the similarity between the mark at issue and the mark of the alleged infringer; (3) the degree of competition between the products; (4) whether the alleged infringer intended to pass off its goods as those of the trademark owner; (5) actual incidents of confusion; and (6) the type of product, its cost, and conditions of purchase.  *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 759–60 (8th Cir. 2005); *Fargo Elecs., Inc.*, 2005 WL 1431653 at *5.

## 1.      Strength of the Mark

A strong or distinctive trademark receives greater protection than a weak or commonplace one.  *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010) (internal quotation marks omitted).  There are four categories that a mark may fit into: "generic, descriptive, suggestive, or arbitrary or fanciful."  *Id.*  An arbitrary or fanciful mark is entitled to the highest level of protection, but a generic mark is given none.  *Id.* at 763–64 (affirming the district court which held that the "flavors" portion of the Sensient Technologies' mark was too generic a term but the portion "sensient" was fanciful).  An arbitrary mark "bears no relation to the product."  *J & B*

*Wholesale Distrib., Inc. v. Redux Beverages, LLC*, 621 F. Supp. 2d 678, 684 (D. Minn. 2007). A generic term is "used by the general public to identify a category of goods, and as such merits no trademark protection." *See Duluth News-Tribune, a Div. of Nw. Publ'ns, Inc. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996).

In measuring a mark's strength, the Court looks to the distinctiveness of the mark and the extent to which the mark is recognized by the relevant consumer class. *Fargo Elecs., Inc.*, 2005 WL 1431653 at *5. Plasti Dip asserts that PLASTI DIP is a well-known brand as the product has been sold since 1959. Plasti Dip also points to several instances in online forums where PLASTI DIP is the point of reference for discussing comparisons. (Conley Decl. at Ex. 14.) In addition to being holder of the trademark in the United States, Plasti Dip also holds trademarks for the product in Australia, Brazil, Canada, Japan, Mexico, and the European Union. (*Id.* at Ex. 3.) Plasti Dip also has trademark applications pending in China, South Korea, Russia, Uruguay, Chile, and India. (*Id.* at Ex. 4.)

In this case, both elements of the name bear some relation to the product. In addition, the term "dip" can be used to **describe** rubberized coatings and is a term of art among enthusiasts. (Cigelnik Decl. at ¶¶ 6, 14 and Ex's J, R.) Plasti Dip does not provide evidence in the form of consumer surveys, or sales volume data, or evidence of former or current advertising expenditures, to establish strength. Third party usage of similar marks on similar goods is evidence that the mark is relatively weak and entitled less protection. *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626–27 (8th Cir. 1987). Rust-Oleum points out other trademarks with the term "dip" and "plasti." (Cigelnik

Decl. at Ex's G, S1, S2, S3, and S4.)  Rust-Oleum provides nine records of trademarks with "dip" in the name for similar products.  Of those products, four are expired, two are cancelled, and one is a product of Plasti Dip.  The other two trademarks are for DIP SEAL and DURA DIP, both paint coatings with similar uses to PLASTI DIP and FLEXIDIP.  (Cigelnik Decl. at Ex. G.)  Rust-Oleum also provides three examples of trademarks including the term "plasti."  (*Id.* at Ex's S1, S2, S3 and S4.)  PLASTI-KOTE, PLASTI-NAMEL, and PLASTILURE are all types of paint.  (*Id.*)

The fact that "dip" is used throughout the car customization industry tends to weighs against Plasti Dip.  It suggests the mark is not fanciful or arbitrary.  Plasti Dip has held the trademark for PLASTI DIP for many years, but the term "dip" is commonly used industry wide.  At this stage of the case, the strength of mark factor does not weigh in favor of either party.

### 2.    Similarity

In determining the similarity of two marks, the Court may consider "'the marks' visual, aural, and definitional attributes and compare the trade dress of the products in determining whether the total effect conveyed by the two marks is confusingly similar.'" *Sensient Techs. Corp.*, 613 F.3d at 764 (quoting *Luigino's, Inc. v. Stouffer Corp.,* 170 F.3d 827, 830 (8th Cir. 1999)).

In asserting similarity, Plasti Dip argues that (1) the middle "I" is the same in both marks; (2) the ending "dip" is also the same; (3) each mark is a three syllable word; (4) in each, the middle "I" is a dominant part of the mark; (5) each mark has about the same

number of characters (nine letters in one and eight in the other); and (6) the prefixes "PLASTI" and "FLEXI" both relate to elasticity.

In countering those arguments, Rust-Oleum claims that (1) PLASTI DIP is two words, FLEXIDIP is one; (2) they begin with different consonants; (3) FLEXIDIP is in black and PLASTI DIP in yellow; (4) they use different fonts; (5) they use different font sizes (the "f" and "d" are larger than the other letters and the "I" in FLEXIDIP is smaller than the other letters whereas PLASTI DIP's are uniform); (6) PLASTI DIP is in all capital letters while the "I" in FLEXIDIP is lowercase; (7) the "x" in FLEXIDIP has a downward exaggerated slant; and (8) on labels, FLEXIDIP is horizontal and PLASTI DIP is on an angle.

Rust-Oleum also notes that prominent on each competitors' product packaging are their "house marks."  "Rust-Oleum" is on each FLEXIDIP and "Performix" is on the packaging of PLASTI DIP.  Rust-Oleum points to evidence from online forums cited by Plasti Dip in which the products are identified based on these "house marks" and argues that consumers are not confused.

Plasti Dip cites to several cases to support their claim that the names are similar, relying on courts' findings that phrases with the same meaning can be confusingly similar.  The cases cited, however, often use more than just similar meanings or wording to support the outcome.  For example, in *Hancock v. American Steel & Wire Co. of N.J.*, 203 F.2d 737, 740–41 (C.C.P.A. 1953), the U.S. Court of Customs and Patent Appeals held that the mark "Cyclone" pictured on wire mesh fencing, and the mark "Tornado" that was also associated with a picture of a whirlwind on wire mesh fencing, "were

identical, or substantially so, in ordinary meaning" and, if used contemporaneously would

"likely. . . result in confusion."   In *S. C. Johnson & Son, Inc. v. Drop Dead Co.*, 210 F.

Supp. 816, 817 (S.D. Cal. 1962), *aff'd*, 326 F.2d 87 (9th Cir. 1963), the court decided the

mark "Promise" infringed the mark "Pledge" because of similar meanings, imitation of

the "Pledge" color scheme and contrast between letters on cans and labels, and imitation

of descriptive material copied from "Pledge's" label.   The court in *Burger Chef Sys., Inc.

v. Burger Man, Inc.*, 492 F.2d 1398, 1398–99 (C.C.P.A. 1974), held that "Burger Man"

infringed "Burger Chef" because the two marks used similar phrases and also because the

"Burger Man" mark depicted a chef.   Plasti Dip's reliance on these cases is undermined

by the courts' discussion of the similarity of both product names **and** labels in

establishing a likelihood of confusion.

    "'[I]dentical, even dominant, words in common does not automatically mean that

two marks are similar.'"   *Sensient Techs. Corp.*, 613 F.3d at 764 (quoting *Gen. Mills,

Inc.*, 824 F.2d at 627).   In *Frosty Treats Inc. v. Sony Computer Entertainment America

Inc.*, 426 F.3d 1001, 1008–09 (8th Cir. 2005), the Eighth Circuit held that the words

"frosty treats" in the defendant's product were distinct from the plaintiff's "Frosty Treats"

mark where the mark and trade dress were different visually.   The Eighth Circuit in

*Luigino's, Inc. v. Stouffer Corp.*, explained that "Lean Cuisine" and "Lean 'N Tasty"

were not confusingly similar because "the two marks look and sound different."   170

F.3d at 830.   The *Everest Capital Ltd.* court reasoned that "[t]hough each mark uses the

dominant word 'Everest,' that word is part of longer product names that employ different

fonts and graphics."   393 F.3d at 761.

Taking into account the totality of the mark including aural, definitional, and visual attributes, a risk of confusion in this case seems unlikely, at least on the record that is now before the Court.  There are significant differences in how the marks sound and in the products' trade dress.  PLASTI DIP's trade dress features a hand either spraying a can of the product, or a hand holding a set of plyers that were coated with the product.  (Conley Decl. at Ex. 5.) PLASTI DIP also features prominent blue background and yellow lettering.  (Persons Decl. at Ex. 1.)  FLEXIDIP pictures a tire with the wheel rim coated in the product.  (*Id.*)  It has a white background with black lettering.  (*Id.*)  "[U]se of different colors and typefaces, as well as the prominent display of the house marks convey perceptible distinctions between the products."  *Luigino's, Inc.*, 170 F.3d at 831.  The differences between these two marks appears enough to dispel confusion.   The similarity factor weighs in favor of Rust-Oleum.

### 3.     Degree of Competition

There is no dispute that the products in this case compete with each other directly.  When two products are in close competition, "less similarity in the trademarks is necessary to support a finding of infringement."  *ConAgra, Inc. v. George A. Hormel & Co.*, 784 F. Supp. 700, 717–18 (D. Neb. 1992), *aff'd*, 990 F.2d 368 (8th Cir. 1993) (quoting *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). This factor weighs in favor of Plasti Dip.

### 4.     Intent To Pass Off FLEXIDIP as PLASTI DIP

The Eighth Circuit has formed that "[i]ntent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion, but intent is not an element of a claim for trademark infringement." *SquirtCo.* 628 F.2d at 1091.   The alleged infringer's intent is just a part of the analysis in determining whether consumer confusion is likely.  Rust-Oleum did know of Plasti Dip and did intend to compete.  Yet, "[k]nowledge of another's product and an intent to compete with that product is not . . . equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion." *Sensient Techs. Corp*., 613 F.3d at 766 (internal quotation marks omitted).  In *General Mills, Inc*., the Eighth Circuit did not find a plan to pass off its goods as those of a competitor on the part of "Oatmeal Raisin Crisp" despite the owner's intent to compete with the "Apple Raisin Crisp" mark. *Gen. Mills, Inc.*, 824 F.2d at 627.  Rust-Oleum claims that they have a large product base and therefore they do not need to thrive off the goodwill of another mark.  Plasti Dip relies on an inference that their long history in this market and the similarity of the marks  establishes intent.  But, speculation is not enough to establish intent.  *Sensient Techs. Corp.*, 613 F.3d at 767. This factor weighs in favor of Rust-Oleum.

### 5.     Actual Incidents of Confusion

Evidence of actual confusion is "positive proof" of a likelihood of confusion, but it is not essential to a finding of trademark infringement.  *SquirtCo,* 628 F.2d at 1091. Plasti Dip has submitted several online forums and discussions discussing the difference

between PLASTI DIP and FLEXIDIP.   (Conley Decl. at Ex's 12–14.)   The parties

specifically address a blog comment stating "[f]or all we know Plasti-Dip is making this

for everyone and brand labeling it for all of the other brands.  Makes more sense to do it

that way instead of reinventing the wheel." (*Id.* at Ex. 11.)  Rust-Oleum maintains that

there have been no instances of actual confusion throughout eight months of head-to-head

competition.   Rust-Oleum claims that the quote discussed is not actual evidence, but is

mere speculation about the possibility of confusion.   "Even several isolated incidents of

actual confusion" are not enough to establish a likelihood of confusion, rather courts

should look to "whether an appreciable number of ordinary purchasers are likely to be so

misled."  *Sensient Techs. Corp.*, 613 F.3d at 768 (internal quotation marks omitted).

Given that the evidence of actual confusion at this stage of the case is weak, this factor

weighs in favor of Rust-Oleum.

### 6.    Type of Product, Cost, and Conditions of Purchase

"[I]n a trademark infringement action the kind of product, its cost and the

conditions of purchase are important factors in considering whether the degree of care

exercised by the purchaser can eliminate the likelihood of confusion which would

otherwise exist."  *SquirtCo.*, 628 F.2d at 1091 (internal quotation marks omitted).  The

products in this case are low cost, appear alongside each other both online and in Home

Depot stores, and are sometimes offered at the same price.  (Persons Decl. at Ex 1–2.)

Yet, the two products have very different trade dress that in the Court's view diminishes

the risk of confusion.   In addition to the product names, each product displays their

"house" marks.  Finally, given that these products are used in automobile customization, those who purchase the product likely put considerable care and thought into deciding what product to purchase before using the product on an expensive car.  Those consumers are "enthusiasts" for dip products, which is evidenced by some of the websites discussing dipping.  This factor weighs in favor of Rust-Oleum.  Viewing each of the above discussed factors in totality, the Court finds that although there is clearly a possibility of consumer confusion, the record in the case does not demonstrate that it is strong enough to constitute a "substantial likelihood" of confusion.  Plasti Dip has not established a likelihood of success on the merits.

### B.      Threat of Irreparable Harm

To succeed in demonstrating a threat of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (internal quotation marks omitted).   Irreparable harm can involve loss of trade, reputation, and good will that "'no final decree of a court can adequately compensate.'"  *Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1431 (D. Minn. 1989) (quoting *Carling Brewing Co. v. Philip Morris, Inc.*, 277 F. Supp. 326 (N.D. Ga. 1967)).  Plasti Dip asserts that there is a presumption of irreparable harm because they have shown a likelihood of confusion.  Rust-Oleum argues that the Supreme Court case *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–92 (2006), establishes that a presumption of irreparable harm is no longer permissible simply because a likelihood of

- 13 -

confusion is established. The Third and Ninth Circuits have extended this ruling, which concerned patents, to trademark cases as well.[1] *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 206 (3rd Cir. 2014); *Herb Reed Enters. v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249–51 (9th Cir. 2013) (*cert. denied*, 2014 WL 1575656 (2014)).

Plasti Dip also argues that even absent a presumption, irreparable harm results because FLEXIDIP detracts from the value of PLASTI DIP and damages the goodwill and prominence of the PLASTI DIP mark. *Bishops Bay Founders Grp., Inc. v. Bishops Bay Apartments, LLC*, 301 F. Supp. 2d 901, 913 (W.D. Wis. 2003) (holding that "damage to the good will and prominence of plaintiff's mark through public confusion is an irreparable injury"). Rust-Oleum notes that these cases came before the *eBay* ruling and argues that Plasti Dip has not put forth any evidence about how its product would be damaged in these ways. Rest-Oleum argues that Plasti Dip is asking the Court to infer harm without actual evidence of harm.

There is a possibility that the goodwill that Plasti Dip has developed over fifty years of selling PLASTI DIP could be damaged. Yet, a showing of irreparable harm must involve more than the possibility of harm. *Shade's Landing, Inc. v. Williams*, 76 F. Supp. 2d 983, 991–92 (D. Minn. 1999). Plasti Dip's claim of injury to goodwill is, at this stage of the case, speculation and speculation is not enough to show irreparable

---

[1] The Court finds the analysis in these cases persuasive, but in this case it is unnecessary to reach a conclusion on the issue of the extension of *eBay* to trademark cases.

harm.[2]  *See e.g.*, *Gen. Motors Corp. v. Harry Brown's, LLC*, 590 F. Supp. 2d 1134, 1138–

39 (D. Minn. 2008) *aff'd,* 563 F.3d 312 (8th Cir. 2009).

### C.      Balancing Harm with Injury to Non-Moving Party

When considering a motion for preliminary injunction, Courts must consider the

potential for injury to the defendant if the injunction is granted.  *Dataphase Sys.*, 640

F.2d at 113.   When the plaintiff "has made a substantial investment developing its

trademark relative to the nonmoving party's investment in the allegedly infringing mark,

the courts generally find that the moving party's hardship outweighs that of the

nonmoving party."  *Aveda Corp.*, 706 F. Supp. at 1431.  PLASTI DIP has been sold for

over fifty years and is sold worldwide.  Rust-Oleum has just recently begun selling the

product FLEXIDIP in the last year.   Plasti Dip argues that its request for injunction is not

excessively harmful to Rust-Oleum because it is not a national store level recall, but is

rather a pull-back of on-shelf inventory which would include enjoining Rust-Oleum from

advertising, selling, and offering FLEXIDIP online and from selling, shipping, or

distributing FLEXIDIP.  Plasti Dip argues that the injunction would not shut down Rust-

Oleum as they are a large business with several other product lines.

Rust-Oleum counters that the preliminary injunction request would force Rust-

Oleum to adopt a new mark for the product or stop selling the product completely.  This

would lead to additional costs and would affect sales.  The costs would stem from

creating a new mark acceptable to its chief retailer, Home Depot and from re-designing

---

[2] A court may deny a preliminary injunction strictly on the grounds that the movant did not show a threat of irreparable harm.  *Watkins Inc.*, 346 F.3d at 844.

promotional materials and products.  In addition the requested relief would affect Home Depot, a third party, and Rust-Oleum's relationship with Home Depot as it would have to accept returns of the product from Home Depot or find a way to re-label the product. While both parties offer little evidence regarding their respective costs, Rust-Oleum offers concrete examples of where costs would accrue. The injuries to Rust-Oleum including costs to re-label and costs to the relationship with Home Depot appear to outweigh the potential injuries to Plasti Dip due to their investment in their mark.  In addition, if FLEXIDIP is later found to intrigue Plasti Dip's trademark, Rust-Oleum is likely able to pay damages.

### D.    Public Interest

Although infringement of trademarks and unfair competition is inherently contrary to the public interest, *see, e.g., Am. Dairy Queen Corp. v. New Line Prods., Inc.*, 35 F. Supp. 2d 727, 733 (D. Minn. 1998), where the likelihood of success on the claim is not overwhelming, the weight of the public interest factor is correspondingly reduced. *Fargo Elecs., Inc.*, 2005 WL 1431653, at *8.  As the probability that consumers will be confused or deceived in this case is not significant, the Court concludes that the policies underlying the Lanham Act would not be served by granting a preliminary injunction in this case.

While the products are in direct competition, that reality alone does not overwhelm the fact that Plasti Dip has not met its burden, at least at this early stage of the case.  Therefore, the Court will deny the motion for preliminary injunction.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Plaintiff's Motion for preliminary injunction [Docket No. 12]

is **DENIED**.


DATED:   December 16, 2014                    _s/ John R. Tunheim_
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                           United States District Judge