# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Plasti Dip International, Inc.,

    Plaintiff,

v.

Rust-Oleum Brands Company and
Rust-Oleum Corporation,

    Defendants.

**Civil No. 14-cv-1831 (JRT/SER)**

**REPORT AND RECOMMENDATION**

---

Kristine M. Boylan, Patrick S. Williams, and Ruvin S. Jayasuriya, Esqs., Briggs & Morgan, PA, Minneapolis, Minnesota, for Plaintiff.

Christopher A. Pinahs, Esq., Carlson Caspers, Minneapolis, Minnesota, for Defendants.

Raymond Rundelli and John Timothy Wiedemann, Esqs., Calfee Halter & Grisold LLP, Cleveland, Ohio, for Defendants.

---

STEVEN E. RAU, United States Magistrate Judge

This matter comes before the Court on Defendants Rust-Oleum Brands Company and Rust-Oleum Corporation's (collectively, "Rust-Oleum") Motion to Exclude Opinions and Testimony of Larry G. Chiagouris, Ph.D. ("Motion to Exclude") [Doc. No. 166]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1. (Order of Reference) [Doc. No. 192]. For the reasons stated below, the Court recommends that the Motion to Exclude be granted in part and denied in part.

I.   BACKGROUND

   A.   Factual Background

This action was initiated in June 2014, and ultimately, Plaintiff Plasti Dip International, Inc. ("Plasti Dip") filed its third amended complaint in April 2016. (Consolidated/Third Am. Compl.) [Doc. No. 141]. Plasti Dip alleges that it entered into an agreement in July 2013 (the "Agreement"), with Rust-Oleum to "supply a product under a joint label." (*Id.* ¶ 18). This product would include trademarks owned by both Plasti Dip and Rust-Oleum, would "consist of Plasti Dip['s] proprietary confidential trade secret information," and would be "delivered to market" using Plasti Dip's proprietary confidential trade secret information as well. (*Id.*). The Agreement specified that Rust-Oleum could not use Plasti Dip's proprietary information for its own benefit or the benefit of others without authorization. (*Id.* ¶ 21).

In October 2013, Rust-Oleum applied to use the trademark FLEXIDIP "for the same or a similar product to that as sold under" the PLASTI DIP brand. (*Id.* ¶ 25). In January 2014, Rust-Oleum began selling a product labeled FLEXIDIP in containers the same size as Plasti Dip's product to Home Depot—Plasti Dip's largest retail customer—using Plasti Dip's proprietary confidential trade secret information. (*Id.* ¶ 28). Plasti Dip alleges Rust-Oleum and its employees, contractors, and agents engaged in promotional activities using Plasti Dip trademarks and names in violation of the Lanham Act and related laws. (*Id.*). In March 2015, Rust-Oleum's use of FLEXIDIP expanded to additional retail outlets and to areas outside of the United States. (*Id.* ¶ 35).

Plasti Dip alleges that Rust-Oleum: (1) engaged trademark infringement in violation of the Lanham Act; (2) engaged in federal unfair competition in violation of the Lanham Act; (3) should have its trademark application for the use of FLEXIDIP refused or canceled; (4) violated

the common law of trademark infringement and unfair competition; (5) violated state law regarding trademark infringement and unfair competition; (6) breached nondisclosure agreements; (7) violated the Minnesota Uniform Trade Secrets Act; (8) engaged in unfair competition; and (9) was unjustly enriched. (*Id.* ¶¶ 40–97).

### B. Procedural Background

Plasti Dip identified Larry G. Chiagouris, PhD ("Dr. Chiagouris"), as an expert who would testify regarding the strength of Plasti Dip's brand. (Mem. in Supp. of Mot. to Exclude, "Mem. in Supp.") [Doc. No. 168 at 3]. To that end, Plasti Dip submitted Dr. Chiagouris's initial expert report on June 1, 2015. (*Id.*). On May 31, 2016, Plasti Dip submitted Dr. Chiagouris's supplemental report. (*Id.*); (May 31, 2016 Suppl. to June 1, 2015 Report of Dr. Larry Chiagouris, "Suppl. Report," Ex. A, Attached to Decl. of Christopher A. Pinahs in Supp. of Mot. to Exclude) [Doc. No. 169]. Rust-Oleum argues that Dr. Chiagouris's opinions in his Supplemental Report regarding "Conditions That Likely Lead to Consumer Confusion," "Examples of Customer Confusion," and the cost of necessary corrective advertising to "Offset Customer Confusion" are not based on expert work but instead are based "on the same type of layman's conclusion that will (and must) be performed by the jury." (Mem. in Supp. at 4). Therefore, Rust-Oleum argues that Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), preclude the admission of these opinions. *See* (*id.* at 2).

The Court heard oral argument on December 20, 2016, and the matter is now ripe for consideration.[1] *See* (Minute Entry Dated Dec. 20, 2016) [Doc. No. 198].

---

[1] Also at this hearing, the Court heard oral argument regarding Rust-Oleum's Motion to Exclude the October 18, 2016 Supplement to the Expert Report of Richard C. Lindmark, Jr. and Preclude Testimony Relating to the Calculations, Analysis, and Opinions Set Forth Therein [Doc. No. 181]. (Minute Entry Dated Dec. 20, 2016) [Doc. No. 198]. The parties reached an

## II.   DISCUSSION

### A.   Legal Standard

Under the Federal Rules of Evidence,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This rule reflects the broad principle that trial judges have discretion to admit expert testimony and must serve as gatekeepers to ensure expert testimony is both relevant and reliable. *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 928 (8th Cir. 2001); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert*, 509 U.S. at 590–91. In terms of relevance, the evidence "must be useful to the finder of fact in deciding the ultimate issue of fact." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001); *see also* Fed. R. Evid. 702(a). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006).

In terms of reliability, the proposed expert witness must be qualified, and "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Lauzon*, 270 F.3d at 686 (internal quotation marks omitted); *see also Daubert*, 509 U.S. at 591; Fed. R. Evid. 702(b)–(d). The "primary concern" of Rule 702 is "the expert witnesses' methodology, rather than their conclusions." *Bonner*, 259 F.3d at 929. Under *Daubert*, a court may also consider "(1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has

---

agreement resolving that motion, and the Court subsequently denied the motion. *See* (Order Dated Dec. 21, 2016) [Doc. No. 199].

been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted." *Lauzon*, 270 F.3d at 686–87 (internal quotation marks omitted). "[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141.

Expert testimony must be excluded "[o]nly if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Bonner*, 259 F.3d at 929–30. Expert testimony may also be excluded if "the subject matter is within the knowledge or experience of lay people." *See Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984) (per curiam) (citing *Bartak v. Bell-Gaylardt & Wells, Inc.*, 629 F.2d 523, 530 (8th Cir. 1980)).

### B. Analysis

The Court addresses each of Rust-Oleum's arguments regarding Dr. Chiagouris's Supplemental Report in turn.

#### 1. Proximity

Relying on the marketing discipline of "consumer behavior," Dr. Chiagouris opined that the proximity of two similar products, such as Plasti Dip products and FlexiDip, may lead to confusion among customers. *See* (Suppl. Report at 24–25). More specifically, Dr. Chiagouris opined that "some consumers, based on the very close proximity and similarity of the names of the two brands, . . . more likely than not, can be expected to perceive that the two brands are sourced from the same company." (*Id.* at 28). Rust-Oleum argues that Dr. Chiagouris "did not do any actual analysis, by survey or otherwise, to demonstrate that any consumer would confuse the products merely by reason of proximity." (Mem. in Supp. at 9).

The Court finds that Dr. Chiagouris's opinion regarding proximity is admissible. Although Dr. Chiagouris did not do a survey, to say he "did not do any actual analysis" is belied by the Supplemental Report. Dr. Chiagouris describes common purchase situations where competing products are "inches away" from each other, and finds that those circumstances "are similar to the circumstances associated with the purchase of products sold under the Plasti Dip brand or the FlexiDip brand." (Supp. Report at 24–25). He visited Home Depot stores, which sell both products, or arranged to have photos taken at Home Depot "to determine how the stores display the Plasti Dip and FlexiDip products." (*Id.* at 28). He concludes that the proximity "can lead consumers to become confused with regard to the source of goods of the products" and that "some consumers" may believe the two brands are from the same company. (*Id.* at 25, 28). In other words, Dr. Chiagouris relied on his expertise to analogize the placement of the products at issue in this case to other products that are commonly purchased and shelved near each other. Rust-Oleum may dispute the rigor of this analysis, but "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Daubert*, 509 U.S. at 596.

The Court cannot conclude that Dr. Chiagouris's opinion with respect to proximity "is so fundamentally unsupported" that it must be excluded. *See Bonner*, 259 F.3d at 929–30. Therefore, the Motion to Exclude is denied to the extent it seeks exclusion of Dr. Chiagouris's opinion regarding the proximity of Plasti Dip and Rust-Oleum's products.

    **2.**    **Selection of FLEXIDIP Mark**

Dr. Chiagouris opined that "Rust-Oleum chose the FlexiDip name to get leverage from the awareness of the Plasti Dip-branded product." (Suppl. Report at 25). Dr. Chiagouris explains

that his conclusion is based on (1) Rust-Oleum's past similar behavior when naming another product; (2) Rust-Oleum's use of the root word "dip" and addition of the "i" before it to mirror Plasti Dip's name; (3) an email conversation between a Rust-Oleum employee and a Home Depot employee where the Rust-Oleum employee observed that searching the Home Depot website would return both products because "both products have the word Dip in the name"; and (4) Rust-Oleum payment "for a search engine marketing campaign that used the name Plasti Dip in its advertising materials intended to promote the sale of its FlexiDip products." (*Id.* at 25–26). Rust-Oleum argues that Dr. Chiagouris's "opinions about corporate intent are based on nothing but his own speculation and spin, and they will not assist the jury." (Mem. in Supp. at 10).

"The question of corporate intent is one for the jury, not for an expert." *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1069 (D. Minn. 2007) (Davis, J.).[2] Plasti Dip argues that Dr. Chiagouris applied "his consumer and marketing behavior" expertise to reach these conclusions. (Mem. in Opp'n to Mot. to Exclude, "Mem. in Opp'n") [Doc. No. 176 at 33–34]. The Court agrees that Dr. Chiagouris's experience is directly relevant to his opinion regarding Rust-Oleum's intent, which stands in contrast to the cases Rust-Oleum cited. For example, Rust-Oleum cited the *Rezulin* case, in which the experts were "physicians and scientists" who offered opinions regarding "the ethical obligations of pharmaceutical companies and whether the defendants' conduct was ethical." *In re Rezulin Prods. Liability Litig.*, 309 F. Supp. 2d 531, 542–43 (S.D.N.Y. 2004); *see also* (Mem. in Supp. at 14). A threshold problem with the evidence was that it was based on the opinions of the experts "personal, subjective views," rather than their expert knowledge. *See Rezulin*, 309 F. Supp. 2d at 543. Similarly, Rust-Oleum cited the *Baycol*

---

[2]   Although *Baycol* was not a trademark case, the Court nonetheless finds its statement that a jury must determine corporate intent can be broadly applied to expert testimony regardless of the claims at issue. *See Baycol*, 532 F. Supp. 2d at 1035 (listing claims).

7

case, in which the physician expert was prohibited from testifying regarding a pharmaceutical company's "motive, knowledge, intent or state of mind." *See Baycol*, 532 F. Supp. 2d at 1069; (Mem. in Supp. at 14). The court stated that "an expert may not testify as to ethical issues or to his personal views." *Baycol*, 532 F. Supp. 2d at 1069.

Regardless of Dr. Chiagouris's expertise, however, he does not have personal knowledge of Rust-Oleum's intentions, and his ability to apply his expertise to the documents at issue does not give him knowledge of Rust-Oleum's intentions. Instead, these opinions are speculation. Therefore, the Motion to Exclude is granted to the extent Dr. Chiagouris opines about Rust-Oleum's intent in selecting the FlexiDip mark.

### 3. Similarities of Marks

Dr. Chiagouris opined that Rust-Oleum used the same root word, "dip," in its product, which was "already established by Plasti Dip." (Suppl. Report at 25). Further, Dr. Chiagouris opined that Rust-Oleum's incorporation of "the letter 'i' followed by the word 'Dip' . . . could likely result in the appearance of perceived similarity by consumers" and that "Rust-Oleum arranged the word [FlexiDip] so that the letter 'D' would be capitalized in a fashion similar to the letter 'D' as it appears capitalized within the Plasti Dip brand name." (*Id.* at 25–26). Rust-Oleum argues that Dr. Chiagouris's identification of these similarities does not satisfy Rule 702 because these similarities can be evaluated by lay persons "and an expert's conclusion" on this matter "is not helpful to the jury." (Mem. in Supp. at 10).

Plasti Dip argues that Dr. Chiagouris's opinion on the similarity of these marks with respect to "i" and "Dip" relies on his marketing experience. (Mem. in Opp'n at 29). The Court disagrees. Nothing about Dr. Chiagouris's analysis suggests that he relied on his marketing and branding experience to make the comparison; his opinion regarding the letter "i" and the root

word "dip" "is within the knowledge or experience of lay people." *See Ellis*, 738 F.2d at 270. Therefore, his expert testimony will not "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a); *Lauzon*, 270 F.3d at 686; *Ellis*, 738 F.2d at 270. Thus, the Motion to Exclude is granted to the extent it seeks exclusion of Dr. Chiagouris's opinion regarding the similarity of Plasti Dip's and Rust-Oleum's marks based on the spelling and capitalization of the marks.

### 4. Bloggers

Dr. Chiagouris opined that Rust-Oleum used a marketing initiative called Project 1000 that included paying bloggers "to create content based on the creation of projects using the FlexiDip brand that would be viewed by other consumers." (Suppl. Report at 27). Dr. Chiagouris opined that this practice may result in consumers creating their own new content, "which, in turn, is viewed by additional consumers." (*Id.*). Additional consumers then view the content "and the cycle of consumer content creation can repeat itself as the universe of consumers grows." (*Id.*). Dr. Chiagouris opined that "the universe of potentially confused and misled consumers would then . . . also grow" and "even more consumers" may become "aware of the FlexiDip name without understanding that FlexiDip is not associated with Plasti Dip." (*Id.*). Rust-Oleum argues that Dr. Chiagouris does not refer to a specific blog post and instead "offers the conclusory opinion that because confusion already exists, blogs that do not disclaim a connection between [Plasti-Dip's] and [Rust-Oleum's] marks exacerbate that confusion." (Mem. in Supp. at 12). Rust-Oleum further argues that "Dr. Chiagouris offers no study or other empirical evidence to support this conclusion, so his opinion on this point is also inadmissible under *Daubert*." (*Id.*).

The Court disagrees with Rust-Oleum's characterization of this part of Dr. Chiagouris's report and instead concludes that his opinion is reliable with respect to how the marketing

strategy works. Dr. Chiagouris's opinion regarding this marketing initiative is limited to how the project works as a marketing strategy and the growth of "**potentially** confused and misled consumers" based on this strategy. *See* (Suppl. Report at 27) (emphasis added). Therefore, the Motion to Exclude is denied to the extent Dr. Chiagouris opines on the potential effects of Project 1000.

### 5. Actual Confusion

Dr. Chiagouris describes several instances of what he characterizes as "examples of customer confusion." *See* (Suppl. Report at 28–36). These examples include the declaration of a Plasti Dip user, the deposition testimony of an individual who appears to be familiar with both products, various social media and other internet resources, and customers' communications with Rust-Oleum regarding Plasti Dip. *See* (*id.*). Rust-Oleum argues this opinion is based "merely on the expert's interpretation of the evidence to be evaluated by the jury" and argues that Dr. Chiagouris does not "employ any reliable or reviewable methodology to conclude that the proffered examples do in fact demonstrate actual confusion." (Mem. in Supp. at 12).

Plasti Dip distinguishes the cases on which Rust-Oleum relies, arguing that the experts in those cases did not have experience in marketing or did not make marketplace observations. (Mem. in Opp'n at 36). In this case, Dr. Chiagouris has marketing experience and did conduct marketplace observations. But he did not apply either his branding and marketing expertise or his observations to his determinations regarding confusion. Instead, he used testimony, internet posts, and other resources in which consumers used both the Plasti Dip and FlexiDip marks and concluded that each consumer was confused based on the consumer's use of both marks. *See generally* (Suppl. Report at 28–36). This conclusion presumes familiarity with the consumers' state of mind. But because Dr. Chiagouris did not interview any consumers, much less those he

concludes are confused about the parties' marks, he does not personally have that knowledge. The Court therefore concludes his evidence regarding actual confusion based on the underlying evidence "is within the knowledge or experience of lay people," and his expert testimony is neither helpful nor relevant. *See* Fed. R. Evid. 702(a); *Louzon*, 270 F.3d at 686; *Ellis*, 738 F.2d at 270. Thus, the Motion to Exclude is granted to the extent it seeks exclusion of Dr. Chiagouris's opinion regarding examples of actual confusion identified in the Supplemental Report.

### 6. Corrective Advertising

Dr. Chiagouris opines that the cost of an advertising program "to address consumer confusion" is more than $1.6 million. *See* (Suppl. Report at 37). Rust-Oleum argues that Dr. Chiagouris may, for the purposes of this motion, "opine on the cost of necessary and corrective advertising in general," but may not opine as to "the cost of necessary corrective advertising to 'Offset Consumer Confusion.'" (Mem. in Supp. at 4). Rust-Oleum does not make any factual or legal arguments that support excluding Dr. Chiagouris's opinion regarding corrective advertising. *See generally* (*id.*). Further, the conclusion of Rust-Oleum's brief suggests that they do not, in fact, intend to challenge this opinion. *See* (*id.* at 13) (stating that "[n]one of Dr. Chiagouris' opinions, outside of his strength-of-mark and corrective-advertising opinions, is based on any expert work, so they should be excluded"); *see also* (Reply Mem. in Supp. of Mot. to Exclude, "Reply") [Doc. No. 187 at 2] (similarly demonstrating that Rust-Oleum does not object to Dr. Chiagouris's opinion regarding corrective advertising). To the extent Rust-Oleum challenges Dr. Chiagouris's opinions regarding corrective advertising, the Motion to Exclude is denied without prejudice because the argument is not supported.

**III.    REMAINING ISSUES**

In addition to excluding Dr. Chiagouris's opinions under Rule 702, Rust-Oleum argues that Dr. Chiagouris's opinions should be excluded under Rule 403 of the Federal Rules of Evidence.[3] *See* (Mem. in Supp. at 2). This argument, however, is unsupported. Aside from its initial assertion, Rust-Oleum refers to Rule 403 only two other times. *See* (*id.* at 8, 11). First, Rust-Oleum argues in passing that Dr. Chiagouris's opinions regarding actual confusion "are inadmissible under *Daubert* and Evidence Rules 702 and 403." (*Id.* at 8). Second, Rust-Oleum describes one of the court's holdings under Rule 403 in *Patsy's Italian Restaurant, Inc. v. Banas*, 531 F. Supp. 2d 483 (E.D.N.Y. 2008), and then states that "[t]his Court should likewise exclude Dr. Chiagouris' opinions concerning the similarity of the marks at issue here." (*Id.* at 11). Any argument Rust-Oleum makes that Dr. Chiagouris's opinions should be excluded under Rule 403 is supported by neither facts nor law. Thus, to the extent the Motion to Exclude relies on Rule 403, the motion is denied without prejudice because the argument is not supported.

Relatedly, the parties dispute whether Rust-Oleum may raise additional challenges to Dr. Chiagouris's opinions at a subsequent stage of this case. *See* (Mem. in Supp. at 4 n.1) (stating that the deficiencies in Dr. Chiagouris's opinions that Rust-Oleum does not dispute in the Motion to Exclude "will be address[ed] either at the motion *in limine* stage or at trial"); (Mem. in Opp'n at 1 n.1) (stating that "Defendants' request for multiple opportunities to seek exclusion of expert testimony from Dr. Chiagouris should be disallowed" and "Defendants should be allowed one motion, rather than multiple motions on this issue"); *see also* (Reply at 2 n.1). The only decision that has been referred to the undersigned is the Motion to Exclude. Whether and when Rust-

---

[3] Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Oleum may file additional motions regarding Dr. Chiagouris is within the province of the Honorable John R. Tunheim as the trial judge.

## IV. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants Rust-Oleum Brands Company and Rust-Oleum Corporation's Motion to Exclude Opinions and Testimony of Larry G. Chiagouris, Ph.D. [Doc. No. 166] is **GRANTED in part** and **DENIED in part** consistent with the foregoing.

Dated: February 13, 2017

                                                *s/Steven E. Rau*
                                                STEVEN E. RAU
                                                United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.